**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| I.B.E.W. LOCAL 139 ANNUITY, PENSION, WELFARE, AND EDUCATION FUNDS, by Robert Holden and Meredith Kumpon as Trustees; LOCAL UNION NO. 139 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS AND EMPLOYERS LABOR MANAGERMENT COOPERATIVE TRUST, by Robert Holden and Meredith Kumpon as Trustees; and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 139, by Robert Holden as Business Manager,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　　　　- against -<br><br>LINKIN SYSTEMS, LLC<br>5 Ottie Drive<br>Lansing, New York 14882<br><br>and<br><br>JEREMY BUTLER, Individually<br>5 Ottie Drive<br>Lansing, New York 14882<br><br>　　　　　　　　　　　　Defendants. | **COMPLAINT**<br><br>Civil Action No.<br>3:19-cv-1341 (GLS/ML) |

Plaintiffs, by their undersigned attorneys, Blitman & King LLP, complaining of the Defendants, respectfully allege as follows:

### I.　　JURISDICTION AND VENUE

1.　　This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ["ERISA"] [29 U.S.C. §§1001 *et seq.*]. It is an action by fiduciaries of employee benefit plans for monetary and injunctive relief to redress violations of ERISA Sections 515 and 502(g)(2) [29 U.S.C. §§1145, 1132(g)(2)].

2.　　This is also an action arising under Section 301(a) of the Labor-Management Relations Act of 1947, as amended ["LMRA"] [29 U.S.C. §185(a)]. It is a suit for, among other

things, violations of a contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in the LMRA [29 U.S.C. §141 *et seq.*].

3.     Jurisdiction is also conferred on this Court, without respect to the amount in controversy, pursuant to LMRA Section 301(a) [29 U.S.C. §185(a)], and pursuant to the laws of the United States of America [28 U.S.C. §1337].

4.     Venue is established in this Court by ERISA Section 502(e)(2) [29 U.S.C. §1132(e)(2)]. It is an action brought in the judicial district where the plans are administered and where the ERISA violations took place.

## II. DESCRIPTION OF THE PARTIES

5.     Plaintiffs Robert Holden and Meredith Kumpon are trustees of the I.B.E.W. Local 139 Annuity, Pension, Welfare, and Education Funds [hereinafter "Funds"]. Plaintiffs Robert Holden and Meredith Kumpon are fiduciaries for the Funds as defined in ERISA Section 3(14)(A) [29 U.S.C. §1002(14)(A)].

6.     The Funds are administered within the Western District of New York, at 415 West Second Street, Elmira, New York 14901.

7.     The Funds are multiemployer employee benefit plans as defined in ERISA Sections 3(3) and (37) [29 U.S.C. §§1002(3), (37)] and Section 414(f) of the Internal Revenue Code [26 U.S.C. §414(f)].

8.     Plaintiffs Robert Holden and Meredith Kumpon are trustees of Local Union No. 139 International Brotherhood of Electrical Workers and Employers Labor Management Cooperative Trust [hereinafter "LMCC"] administered from 415 West Second Street, Elmira, New York 14901. Plaintiffs Robert Holden and Meredith Kumpon serve as collections agent for the NECA-IBEW National Labor-Management Cooperation Committee Trust Fund [hereinafter

"NLMCC"] administered from Bethesda Metro Center, Suite 1100, Bethesda, Maryland 20814. The LMCC and NLMCC are employee benefit funds authorized by LMRA Section 302(c)(9) [29 U.S.C. §186(c)(9)].

9. The Funds are collection agents for the Administrative Maintenance Fund [hereinafter "A.M.F."] administered from 415 West Second Street, Elmira, New York 14901. The A.M.F. is utilized by the Southern Tier Chapter of NECA, Inc. to administer various labor relations activities in accordance with Section 8.13 of the collective bargaining agreement mentioned below.

10. Plaintiff Robert Holden is the Business Manager of the International Brotherhood of Electrical Workers, Local Union No. 139 [hereinafter "Union"]. The Union is an unincorporated association maintaining its principal office and place of business at 415 West Second Street, Elmira, New York 14901.

11. The Union is a labor organization in an industry affecting commerce within the meaning of the LMRA [29 U.S.C. §141 et seq.].

12. The Funds are entitled to receive contributions on behalf of employees covered by collective bargaining agreements maintained by the Union, and the Funds use these contributions to provide benefits to the Funds' participants and beneficiaries.

13. The Union is entitled to receive certain monies on behalf of the employees covered by collective bargaining agreements maintained by the Union. These monies, known as dues and other deductions, are withheld by the employers from the employees' wages and remitted to the Union in satisfaction of the labor contract obligations.

14. Upon information and belief, Defendant Linkin Systems, LLC [hereinafter "Company"] is a domestic business incorporated under the laws of the State of New York, having its principal place of business and offices located at 5 Ottie Drive, Lansing, New York 14882.

15. Upon information and belief, Defendant Lynkin Systems, LLC performed construction services or otherwise conducted business in the State of New York at all times relevant for this action.

16. Upon information and belief, Defendant Jeremy Butler was, at all relevant times herein, President of the Company, maintaining his principal offices at 5 Ottie Drive, Lansing, New York 14882.

17. Defendants are employers in an industry affecting commerce all as defined in ERISA Sections 3(5), (11), and (12) [29 U.S.C. §1002(5), (11), and (12)]. Defendants are also employers of employees covered by employee benefit plans and multiemployer plans maintained pursuant to collective bargaining agreements, all as defined in ERISA Sections 3(3) and (37) [29 U.S.C. §1002(3) and (37)]. Defendants are obligated to make contributions to the Plans in accordance with ERISA Section 515 [29 U.S.C. §1145].

18. Defendants are employers in an industry affecting commerce within the meaning of LMRA Section 301(a) [29 U.S.C. §185(a)].

19. To the extent that Defendants exercised any authority or control with respect to the management or disposition of assets of an ERISA covered plan, they are fiduciaries within the meaning of ERISA Section 3(21)(A) [29 U.S.C. §1002(21)(A)].

20. Defendants are parties in interest with respect to the Plans as defined in ERISA Section 3(14)(H) [29 U.S.C. §1002(14)(H)], and they act directly as employers and/or indirectly in the interests of employers in relation to the Plans, all as defined in ERISA Section 3(5) [29 U.S.C. §1002(5)].

## III. FIRST CAUSE OF ACTION

21. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "20" inclusive of this Complaint as if fully set forth herein.

22. ERISA Section 515 [29 U.S.C. §1145] provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

23. At all times relevant herein, Defendant Company was party to a collective bargaining agreement with the Union [hereinafter "Agreement"].

24. Pursuant to the Agreements, the Corporation is bound by the terms and conditions, rules and regulations, of the Agreements and Declarations of Trust of Funds, LMCC, and NMLCC together with the International Brotherhood of Electrical Workers Local Union No. 139 Annuity, Pension, Welfare and Educations Funds Collections Policy [hereinafter "Trusts" and "Collections Policy"].

25. The Agreements and Trusts obligate Defendant Company to make contributions to multiemployer plans.

26. The Agreements further obligate the Defendant Company to deduct from each of its employees' wages specified amounts and pay these amounts to the Union, representing Union dues deductions and other monies.

27. In addition to the above and pursuant to the Agreements, the Trusts, and the Collections Policy together with ERISA Sections 515 and 502(g)(2) [29 U.S.C. §§1145; 1132(g)(2)] and LMRA Section 301 [29 U.S.C. §185(a)], in the event the Defendant Company fails to timely remit contributions and deductions, the Company becomes liable not only for the

amount of contributions and deductions due, but also for the following: (1) interest on the unpaid and untimely paid Funds contributions calculated at the rate of twelve percent (12%) per annum from the twentieth (20th) day of the month; plus (2) liquidated damages on the unpaid and untimely paid Funds contributions calculated at the rate of rate of twenty percent (20%) per annum from the twentieth (20th) day of the month; plus (3) interest on the unpaid and untimely paid AMF, LMCC and NLMCC contributions calculated at the rate of twelve percent (12%) per annum from the twentieth (20th) day of the month; plus (4) liquidated damages on the unpaid and untimely paid AMF, LMCC and NLMCC contributions calculated at the rate of twenty percent (20%) of the delinquent payment, but not less than the sum of twenty ($20.00), for each month payment of contributions; plus (5) interest on the unpaid and untimely paid dues and other deductions, at the rate of nine percent (9%) per annum; plus (6) the costs and fees of collection, including, but not limited to, audit fees and attorneys' fees.

28.     The Agreements and Trusts obligate the Defendant Company to remit the contributions by the twentieth (20th) day of the month following the month during which the hours were worked by employees.

29.     At all times relevant to this Complaint, and based on Defendant Jeremy Butler's ownership, management, and control over Defendant Company as well as the other factors established by applicable law, Defendant Company is bound to the Agreements, Trusts, and Collections Policies and is liable for the amounts owed as described in this Complaint.

30.     Upon information and belief, Defendant Company is owned and operated by Defendant Jeremy Butler from the facility located at 5 Ottie Drive, Lansing, New York 14882.

31.     Based on an audit of hours worked in covered employment, the Defendant Company owes $8,494.23 in fringe benefit contributions and deductions for hours worked by the

Defendant's employees during the period January 1, 2017 through March 31, 2019.

32. The Defendant Company has failed and refused, and continues to fail and refuse, to pay the contributions and deductions due for the period January 1, 2017 through March 31, 2019, plus the applicable interest, liquidated damages, attorneys' fees, audit fees, and costs.

33. The Defendant Company, therefore, owes $8,494.23 in fringe benefit contributions and deductions for hours worked by the Defendant's employees for the period January 1, 2017 through March 31, 2019, plus interest, liquidated damages, attorneys' fees, audit fees, and costs at the rates set forth in the Collections Policy.

## IV. SECOND CAUSE OF ACTION

34. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "33" inclusive of this Complaint as if set forth fully at this point.

35. ERISA Section 404(a) provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses" [29 U.S.C. §1104(a)(1)(A)].

36. ERISA Section 404(a) also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with federal law [29 U.S.C. §1104(a)(1)(D)].

37. The Trusts provide in pertinent part that title to all monies paid into and/or due and owing to the Funds vested in and remains exclusively in the Trustees of the Funds, so outstanding and withheld contributions constitute plan assets.

38. As a result of the work performed by Defendants under the Agreements, Defendants, upon information and belief, received substantial sums of money related to

construction projects intended to pay, among other things, the wages and benefits of employees furnishing and supplying the labor.

39. Defendants were fiduciaries with respect to the plan assets that they failed to timely remit to the Funds.

40. Upon information and belief, Defendant Jeremy Butler owned, controlled, and dominated the affairs of Defendant Company, he purportedly acted on behalf of and in the interest of the Company, and he carried on the business of the Defendant Company for his own personal ends.

41. Upon information and belief, Defendant Jeremy Butler withheld, permitted the withholding of, or authorized the withholding of contributions to the Funds, and Defendant Jeremy Butler dealt with plan assets for his own personal use and benefit although the plan assets rightfully belonged to the Funds.

42. Upon information and belief, Defendant Jeremy Butler had managerial discretion and control over Defendant Company, made all decisions on behalf of the Defendant Company, signed contracts governing the Defendant Company, acted on behalf of and in the interest of Defendant Company, and made all decisions concerning payments by the Defendant Company.

43. Upon information and belief, Defendant Jeremy Butler determined which creditors Defendant Company would pay, determined when the Defendant Company would pay the Funds, determined how much money would be paid to the Funds, determined which employees of the Defendant Company would be reported to the Funds, and exercised control over money due and owing to the Funds.

44. Upon information and belief, Defendant Jeremy Butler commingled or permitted the commingling of assets of the Funds with the Defendant Company's general assets and used

the Funds' assets to pay other creditors of Defendant Company rather than forwarding the assets to the Funds.

45. Upon information and belief, while retaining Plaintiffs' contributions, Defendant Jeremy Butler transferred, applied, or diverted, or permitted the transfer, application, use, or diversion of, the Funds' assets for purposes other than the Funds without first making payment to Funds.

46. The transfer of the assets to persons other than the Funds described in this Complaint occurred, and/or the use of the assets for purposes other than those permitted by the Plaintiff Funds occurred, with the knowledge and/or at the direction of, Defendant Jeremy Butler.

47. By withholding the contributions from one or more of the Funds, Defendant Jeremy Butler received and retained for his own personal use and benefit, monies which were rightfully assets of the Funds in violation of ERISA Section 404(a)(1)(A) [29 U.S.C. §1104(a)(1)(A)].

48. By withholding the contributions from one or more of the Funds, Defendant Jeremy Butler failed to abide by the documents and instruments governing the Funds in violation of ERISA Section 404(a)(1)(D) [29 U.S.C. §1104(a)(1)(D)].

49. To the extent Defendant Jeremy Butler acting in his capacity as corporate officer, director, and/or shareholder, abused his position as fiduciary by permitting, directing, or instigating this transfer, application, or diversion in a manner contrary to his fiduciary obligations and his actions are a breach of trust under ERISA, 29 U.S.C. §§1104, 1106, and 1109.

50. By reason of the wrongful diversion and/or conversion of the Funds' assets, the Funds have not been paid monies rightfully due to them.

51. As a result of the breaches of fiduciary duty described above, Defendant Jeremy Butler is liable to the Funds (i) for the fringe benefit contributions due and owing to the Funds;

plus (ii) for the interest at the consolidated rate of return of the Funds' investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore Funds any profits that Defendants made through use and retention of the assets of these Funds.

## V. THIRD CAUSE OF ACTION

52. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "51" inclusive of this Complaint as if fully set forth herein.

53. Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit [29 U.S.C. §1106(a)(1)(A) and (B)]. Absent an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account [29 U.S.C. §1106(b)(1)-(3)].

54. At all times relevant herein, Defendants were parties in interest with respect to the Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A), (C), and (E) [29 U.S.C. §1002(14)(A), (C), and (E)].

55. To the extent that Defendant Jeremy Butler has withheld, permitted the withholding of, or authorized the withholding of the contributions from one or more of the Funds, Defendant Jeremy Butler has dealt with the plan assets in his own interest and/or exchanged property or extended credit from plan assets for his own personal use and benefit in violation of ERISA Section 406 [29 U.S.C. §1106], and he has received and retained from the Funds for, upon information and belief, his own personal use and benefit, monies which are rightfully assets of the Funds.

56. To the extent that Defendant Jeremy Butler has withheld, received, and retained the contributions, or allowed the withholding and retention of contributions, Defendant Jeremy Butler, as a party in interest, has impermissibly used the assets of one or more of the Funds in

{B0123209.1}                                10

contravention of ERISA Section 406 [29 U.S.C. §1106], the interests of the Funds and the interests of the Funds' fiduciaries, participants, and beneficiaries.

57. As a result of the breaches of fiduciary duty described above, Defendant Jeremy Butler is liable to the Funds (i) for the fringe benefit contributions due and owing to the Funds; plus (ii) for the interest at the consolidated rate of return of the Funds' investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore Funds any profits that Defendants made through use and retention of the assets of these Funds.

## VI. FOURTH CAUSE OF ACTION

58. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "57" inclusive of this Complaint as if set forth fully herein.

59. If this Court does not enjoin Defendants from further violations of ERISA, LMRA, the Agreements, Trusts, and Collections Policy, the Funds will be further damaged as a result thereof in ways and amounts which cannot be accurately measured in terms of money, either as to extent or amount.

60. Defendants have failed to comply with their obligations to the Plaintiff Funds, despite due demand for compliance, and unless this Court enjoins Defendants from violating ERISA, LMRA, the Agreements, Trusts, and Collections Policy, Defendants will continue to fail to timely remit contributions, deductions, and monthly remittance reports described above, causing Plaintiff Funds and the beneficiaries of the Funds to incur additional serious and irreparable harm by further burdening and obstructing the administration and operation of the Funds and endangering the payment of promised benefits from the Funds to qualified beneficiaries.

61. Defendants' failure to comply with its obligations to the Funds has reduced the corpus and income of the Funds thereby jeopardizing the stability and soundness of the Funds as

well as the ability to pay benefits.

62. Defendants' failure to comply with their obligations to the Funds may cause sufficient instability to the Funds' financial affairs such that participant benefits may be reduced or terminated.

63. Because Defendants continue to fail to comply with their obligations to the Funds, new delinquencies are now being created monthly, again depriving the Funds of adequate monies to pay promised benefits which in turn could cause the foregoing irreparable harm to be intensified in magnitude.

64. Based on the foregoing instances of serious, substantial, and irreparable injury and damage, a mere money judgment is an inadequate remedy at law.

65. Unless this Court enjoins Defendants from breaching ERISA, LMRA, the Agreements, Trusts, and Collections Policy and unless Defendants are compelled to remit all monies and reports that become due or are determined to be due to Plaintiffs whether arising before or after commencement of the action, greater injury will be inflicted upon the Funds, their Trustees, participants, and beneficiaries, by denial of relief than could possibly be inflicted upon Defendants by granting such relief.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A. On Plaintiffs' First Cause of Action, judgment against the Defendant Company for $8,494.23 in fringe benefit contributions and deductions for hours worked by the Defendant's employees for the period January 1, 2017 through March 31, 2019, plus interest, liquidated damages, attorneys' fees, audit fees, and costs at the rates set forth in the Collections Policy.

B. On Plaintiffs' Second and Third Causes of Action, judgment against Defendant

Jeremy Butler (i) for the fringe benefit contributions due and owing to the Funds; plus (ii) for the interest at the consolidated rate of return of the Funds' investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore to the Funds any profits that Defendants made through use and retention of the assets of these Funds.

    C.    On Plaintiffs' Fifth Cause of Action, judgment against the Defendants as follows:

        1.    Judgment for any and all additional contributions and deductions that become due following commencement of the action or are determined to be due whether arising before or after commencement of the action, plus the applicable interest and liquidated damages as set forth herein;

        2.    A permanent injunction preventing and restraining the Defendants from breaching the Agreements and Declarations of Trust, and the collective bargaining agreement by which they are bound; and

        3.    A permanent injunction directing the Defendants to perform and continue to perform their obligations to the Plaintiffs, specifically, directing them to timely furnish the required monthly remittance reports and payments to Plaintiffs, and to provide the Plaintiffs, upon demand and at Defendants' expense, access to the books and records for an audit and examination relating to the employment of its employees, including but not limited to weekly payroll reports, payroll journals and quarterly employer reports for various federal and state agencies.

    D.    Such further relief as the Court deems just and appropriate.

DATED: October 30, 2019

**BLITMAN & KING LLP**

By: *Daniel Kornfeld*
Daniel Kornfeld, of Counsel
Bar Roll No. 512729
Attorneys for Plaintiffs
Office & Post Office Address
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204
Telephone: (315) 422-7111
Facsimile: (315) 471-2623
Email: dekornfeld@bklawyers.com